UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHAGHAYEGH KEYHANPOOR *et al.*,

    *Plaintiffs*,

v.

ANTONY BLINKEN *et al.*,

    *Defendants*.

Civil Action No. 21-1182 (TJK)

**MEMORANDUM OPINION**

Plaintiffs—two foreign visa applicants, two U.S. citizens, and a nonprofit—sued various federal officials to challenge the denial of visa applications under federal immigration law. They allege that consular officers refused to issue visas for the applicants because of their past service in the Iranian Revolutionary Guard Corps. Defendants moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim. For the following reasons, the Court will grant Defendants' motion and dismiss the case.[1]

**I.      Background**

Under the Immigration and Nationality Act ("INA"), noncitizens living abroad must apply for and receive a visa to permanently reside in the United States. *See* 8 U.S.C. § 1101(a). If a noncitizen abroad has a U.S. citizen relative, that relative may file a Form I-130, Petition for Alien Relative with U.S. Citizenship and Immigration Services. *See* 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1). If approved, the noncitizen may submit a visa application to a local consulate and

---

[1] Also before the Court is Defendant's Motion for Relief from Local Civil Rule 7(n). ECF No. 27. That rule required Defendants to file a certified list of the contents of certain administrative records "simultaneously with the filing of [their] dispositive motion." LCvR 7(n)(1). Plaintiffs opposed the motion. ECF No. 29. Because the Court will grant Defendants' motion to dismiss on the complaint alone, it will also grant this motion.

interview with a consular officer. *See Ghadami v. United States Dep't of Homeland Sec.*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *1 (D.D.C. Mar. 19, 2020); 22 C.F.R. §§ 204.2(a)(3), 42.67(a)(3).

The decision whether to grant a visa lies with the consular officer. *See* 8 U.S.C. § 1201(a)(1); 22 C.F.R. § 42.81(a). But the INA itself sets out various grounds on which a noncitizen may be inadmissible and ineligible for a visa, including the Terrorism Related Inadmissibility Grounds ("TRIG"). 8 U.S.C. § 1182(a), (a)(3)(B). Among the TRIG classifications, members of terrorist organizations and those who have "received military-type training . . . from or on behalf of any organization that, at the time the training was received, was a terrorist organization" are inadmissible. *Id.* § 1182(a)(3)(B)(i)(V)–(VI), (VIII).

There are three "tiers" of "terrorist organizations" under TRIG. They include any organization

> (I) designated under section 1189 of [the INA]; (II) otherwise designated, upon publication in the Federal Register, by the Secretary of State . . . as a terrorist organization, after finding that the organization engages in [terrorist activity]; or (III) that is a group of two or more individuals, whether organized or not, which engages in . . . [terrorist activity].

8 U.S.C. § 1182(a)(3)(B)(vi). The consular officer determines whether a visa applicant is inadmissible under TRIG. *See* 8 U.S.C. § 1201(g).

In 2019, the State Department designated the Iranian Revolutionary Guard Corps ("IRGC") a Tier I Foreign Terrorist Organization under 8 U.S.C. § 1189.[2] Thus, any visa applicant who

---

[2] The IRGC is a branch of the Iranian Armed Forces. When announcing the Department's decision to designate the IRGC a terrorist organization, Former Secretary of State Michael R. Pompeo explained, "The IRGC masquerades as a legitimate military organization," but "[i]t regularly violates the laws of armed conflict; it plans, organizes, and executes terror campaigns all around the world."

served in the IRGC after its Tier I designation took effect is inadmissible under TRIG. But an applicant who served before 2019 may *still* be inadmissible if a consular officer finds that the IRGC qualified as a Tier III organization while they served.

Mohsen Keyhanpoor and Mohammadsadegh Mehrabani Ardekani (the "IRGC Plaintiffs") both served two-year terms in the IRGC many years ago. ECF. No. 20 ("Compl.") ¶¶ 32, 42. They allege that "Iranian males who are legally required to enter the draft can be drafted into one of the three branches of the armed forces: the Army, Law Enforcement Force or IRGC, with no option to choose or right of refusal." *Id*. ¶ 29. They also assert that failing to register for the draft or serve could have resulted in serious penalties, including the loss of civil rights or jail time. *Id*. ¶¶ 4–5. Keyhanpoor alleges that, beginning in 1996, he "served his mandatory conscription with IRGC for two years. He only ever served within Iran and was never stationed abroad. . . . [And] he worked in the human resources division . . . [where] his duties were administrative." *Id*. ¶ 35. So too, Mehrabani Ardekani alleges "[h]e was randomly assigned to IRGC" for his mandatory two-year service in 2003, where "he was assigned to a desk job" and "[h]is duties were primarily human resources." *Id*. ¶¶ 41–43. Both claim they "ceased all contact and communication with IRGC" after their service. *Id*. ¶¶ 37, 44.

Years later, in 2016, Mohsen Keyhanpoor married Shaghayegh Keyhanpoor, a U.S. citizen. Compl. ¶ 38. Not long after, the couple filed a Form I-130, and Mohsen Keyhanpoor appeared for a consular interview at the U.S. Embassy in Ankara, Turkey. *Id*. ¶ 39. Ultimately, in 2020, the consular officer refused his visa application, citing TRIG ineligibility. *Id*. Later that year, and

---

Remarks to the Press: Secretary Pompeo Announces Intent to Designate IRGC as a Foreign Terrorist Organization, U.S. EMBASSY IN EGYPT (Apr. 8, 2019), https://eg.usembassy.gov/secretary-pompeo-announces-intent-to-designate-irgc-as-a-foreignterrorist-organization/.

upon Mohsen Keyhanpoor's request, the consular officer reconsidered the refusal but declined to issue the visa. *Id.* ¶ 40.

Alireza Mehrabani, Mohammadsadegh Mehrabani Ardekani's U.S. citizen father, filed a Form I-130 for his son in 2011. Compl. ¶ 46. Mehrabani Ardekani appeared for a consular interview at the U.S. Embassy in Ankara in 2019. *Id.* In 2020, the consular refused his visa under TRIG. *Id.* ¶ 47.

In August 2021, the two IRGC Plaintiffs, their two U.S. citizen family members ("U.S. Citizen Plaintiffs"), and Pars Equality Center ("Pars")—a nonprofit—sued Defendants for violating the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706(2), the INA, and the Fifth Amendment's Due Process Clause. They allege that Defendants' actions in denying the visas under TRIG were arbitrary and capricious because they were "based on legal error; failed to consider all relevant factors; [were] contrary to the INA; and lacked a rational explanation, particularly in light of the reliance interests at stake." Compl. ¶ 57. They also say that Defendants violated the IRGC and U.S. Citizen Plaintiffs' Fifth Amendment rights. *See id.* ¶¶ 59–64. Consular officers' blanket TRIG application to former IRGC members, they argue, has deprived them of statutory and regulatory rights "related to the petition[] for and issuance of visas" and liberty interests in living together in the United States. *Id.* ¶¶ 61–63.

Defendants moved to dismiss, arguing that Pars lacks standing and that the IRGC Plaintiffs lack standing on their Fifth Amendment claim. *See* ECF No. 28 at 15–16. They also argue that even those Plaintiffs who have standing fail to state either an APA or Fifth Amendment claim. *Id.* at 16–17.

4

## II. Legal Standards

When a party moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiffs "bear[] the burden of establishing [subject-matter] jurisdiction by a preponderance of the evidence." *Didban v. Pompeo*, 435 F. Supp. 3d 168, 173 (D.D.C. 2020). A court reviewing such a motion "assumes the truth of all material factual allegations in the complaint, and construes the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Id.* (cleaned up).

"In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead 'enough facts to state a claim to relief that is plausible on its face' and to 'nudge [their] claims across the line from conceivable to plausible.'" *Didban*, 435 F. Supp. 3d at 173 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. Analysis

### A. Certain Plaintiffs Lack Standing

Defendants raise two challenges to the Court's jurisdiction as to Pars and the IRGC Plaintiffs. First, they argue that Pars lacks organizational standing. ECF No. 28 at 19–21. Second, they contend the IRGC Plaintiffs have not suffered an Article III injury for their Fifth Amendment claim because, as unadmitted foreign citizens, they do not have constitutional rights. *Id*. at 25–26. Thus, they too lack standing on their constitutional claim. The Court agrees.

#### 1. Pars Equality Center

Pars Equality Center lacks organizational standing. A little background: "Pars is a community-based social and legal services organization dedicated to helping Iranian American and

5

other Persian-speaking communities fulfill their full potential as informed, self-reliant, and responsible members of American society." Compl. ¶ 13. Among their other services, Pars "assist[s] members with family-based visa petitions and consular processing." *Id.* ¶ 14. They say that "[s]ince the [IRGC TRIG] designation took effect, the Pars legal team has been inundated with inquiries from the community asking questions and expressing concerns." *Id.* ¶ 17. And "[r]esponding to these inquiries has diverted significant resources from other areas of Pars' practice and services." *Id.* In this action, Pars represents itself as well as Plaintiffs Mehrabani Ardekani and his father.

Organizations must satisfy the same standing requirements as individuals.[3] They too must show "an actual or threatened injury in fact that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by a favorable court decision." *ASPCA v. Feld Ent., Inc.*, 659 F.3d 13, 24 (D.C. Cir. 2011).

To state a cognizable injury, an organization must allege "a concrete and demonstrable injury to its activities," not just "a mere setback to [its] abstract social interests." *PETA v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1093 (D.C. Cir. 2015) (cleaned up). "[T]he expenditure of resources on advocacy is not a cognizable Article III injury." *Turlock Irrigation Dist. v. Fed. Energy Regul. Comm'n*, 786 F.3d 18, 24 (D.C. Cir. 2015). Rather, an organization must show (1) that the challenged conduct "perceptibly impair[s] the organization's ability to provide services," *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015); and (2) that it "used its resources to counteract [the alleged] harm." *Id.* Additionally, "in those cases where an organization alleges that a defendant's conduct has made the organization's *activities* more difficult, the presence of a

---

[3] Defendants also challenge Pars's third-party standing. Pars does not respond to Defendants' arguments on this point, and they do not plausibly allege any theory of third-party standing. So the Court agrees Pars lacks third-party standing.

direct conflict between the defendant's conduct and the organization's *mission* is necessary . . . to establish standing." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996).

Pars falls short of its burden to show standing. It asserts that "[r]esponding to [IRGC/TRIG–related] inquiries has diverted significant resources from other areas of Pars' practice and services." Compl. ¶ 17. But this is merely a conclusory allegation that mirrors the legal standard. Pars does not allege, for example, what "responding to inquiries" practically entails, what resources those responses have required, or how and to what extent diverting those resources has affected its other work.

The D.C. Circuit's opinion in *Spann v. Colonial Village, Inc.*, 899 F.2d 24 (D.C. Cir. 1990) offers a helpful contrast. There, the Circuit found that fair-housing organizations had standing where they alleged that defendants' discriminatory advertising "impelled the organizations to devote resources to checking or neutralizing the ads' adverse impact," and the advertisements "required them to devote more time, effort, and money to endeavors designed to educate not only black home buyers and renters, but the D.C. area real estate industry and the public." *Id.* at 27. Specifically, the organizations' executive directors supplied affidavits that explained how defendants' discriminatory advertisements "directly decrease[d] the *effectiveness* of the [organization's] efforts to educate the real estate industry and the community" and "necessitate[d] increased educational efforts" to counteract defendants' influence. *Id.* at 28 (emphasis added) (citations omitted).

The only detail Pars offers is this: "Instead of devoting its resources to representing clients in their immigration cases, the Pars legal team has been forced to spend time advising clients and other community members on the IRGC TRIG designation." Compl. ¶ 17. Similarly, it argues it

7

"has standing because [it has] . . . deplet[ed] the organization's resources in consulting, researching, filing, and advocating IRGC TRIG ban cases." ECF No. 30 at 2. Again, these are largely conclusory allegations, without factual detail. On top of that, part of what Pars alleges, in essence, is that it has depleted its resources litigating cases related to the IRGC TRIG designation (including this one). But the Circuit has made clear that "an organization's diversion of resources to litigation or to investigation in anticipation of litigation is considered a 'self-inflicted' budgetary choice that cannot qualify as an injury in fact for purposes of standing." *Feld Ent. Inc.*, 659 F.3d at 25; *see also Equal Rights Ctr. v. Post Props. Inc.*, 633 F.3d 1136, 1140 (D.C. Cir. 2011). In the end, Pars has not shown that its very ability to provide services has been "perceptibly impaired" so as to confer standing on it.

For these reasons, the Court will grant the motion to dismiss Pars for lack of subject-matter jurisdiction.[4]

### 2. IRGC Plaintiffs

Defendants also argue that the IRGC Plaintiffs lack standing to pursue their Fifth Amendment claim. ECF No. 28 at 25–26. "[F]oreign citizens outside U.S. territory do not possess rights under the U.S. Constitution." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2086 (2020). Relevant here, the Circuit has held that unadmitted foreign citizens abroad "may not assert a Fifth Amendment right in challenging the procedures for granting immigrant visas." *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 104 F.3d 1349, 1354 (D.C. Cir. 1997). In fact, Plaintiffs do not even address Defendants' arguments that the IRGC

---

[4] In addition, as explained below, the Court will dismiss the claims brought by the IRGC and U.S. Citizen Plaintiffs under Rule 12(b)(6). Even if Pars had standing, it does not explain how (or even argue that) its claims would survive the Court's reasoning dismissing all the other claims in the complaint.

Plaintiffs lack standing to pursue their Fifth Amendment claim.[5]  Thus, the Court will also grant the motion to dismiss the Fifth Amendment claim as to the IRGC Plaintiffs.

### B.  Plaintiffs Have Failed to State a Claim for Relief

Defendants next argue that the consular nonreviewability doctrine bars any APA challenge to the two visa denials.  ECF No. 28 at 32–37.  They also contend that the U.S. Citizen Plaintiffs have failed to state a Fifth Amendment claim because they do not allege Defendants deprived them of a *constitutionally protected* liberty or property interest.  *Id*. at 28–30.  Again, the Court agrees with Defendants.

#### 1.  Consular Nonreviewability

Plaintiffs' APA claim asks the Court to look behind the consular officers' refusals of the IRGC Plaintiffs' visa applications to the merits and policies informing those outcomes.  But under the consular nonreviewability doctrine, it cannot.  "Consular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise."  *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021).  The doctrine applies once "a consular officer has made a decision with respect to a particular visa application." *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016) (cleaned up).  At that point, courts may not review the consular officer's decision "even where it is alleged that the consular officer failed to follow regulations, where the applicant challenges the validity of the regulations on which the decision was based, or

---

[5] For that reason, as Defendants argue, the Court may also treat this point as conceded.  *See Texas v. United States*, 798 F.3d 1108, 1100 (D.C. Cir. 2015) (District Court Local Rule 7(b) "is understood to mean that if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded").

9

where the decision is alleged to have been based on a factual error." *Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1, 4 (D.D.C. 2009). The IRGC and U.S. Citizen Plaintiffs' APA claim falls within this doctrine's broad sweep.

The doctrine admits only two narrow exceptions: "First, an American citizen can challenge the exclusion of a noncitizen if it burdens the citizen's constitutional rights. The second occurs whenever the Congress says otherwise." *Baan Rao Thai Rest.*, 985 F.3d at 1024–25 (cleaned up). Plaintiffs do not dispute that neither exception applies to the APA claim here, so it must be dismissed.

Plaintiffs' only contrary argument is that exclusion based on service in the IRGC—before the IRGC was designated a Tier I terrorist organization—is "not facially legitimate or *bona fide*." ECF No. 30 at 3 (citing *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972)). This contention is meritless. By invoking TRIG, Defendants provided a facially legitimate justification for denying the IRGC Plaintiffs' visas. *See Udugampola v. Jacobs*, 795 F. Supp. 2d 96, 106 (D.D.C. 2011) ("By providing the applicant the statutory basis for the denial of his visa, the defendants provided a facially legitimate justification."). To boot, Plaintiffs concede that Defendants may lawfully apply TRIG to visa applicants who served in the IRGC before its Tier I designation took effect if a consular officer "identif[ies] IRGC as a Tier III terrorist organization." Compl. ¶ 52. And other than their conclusory assertion that Defendants' visa denials were not bona fide, they allege nothing that suggests the consular officers acted in bad faith. Thus, the Court "will [not] look behind the exercise of [their] discretion." *Kleindienst*, 408 U.S. at 770.

### 2. Fifth Amendment Due Process Claim

While consular nonreviewability forecloses APA review of the IRGC Plaintiffs' visa denials, the U.S. Citizen Plaintiffs' Fifth Amendment claim fits one of the doctrine's exceptions. *See*

*Baan Rao Thai Rest.*, 985 F.3d at 1024 ("[A]n American citizen can challenge the exclusion of a noncitizen if it burdens the citizen's constitutional rights."). Even so, the Court will dismiss the claim because the U.S. Citizen Plaintiffs fail to allege any deprivation of a constitutionally protected interest. Thus, they fail to state a Fifth Amendment violation.

"[T]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). Plaintiffs allege that "Defendants' actions have resulted in a system in which U.S. citizens are denied the ability to live with their loved ones in the U.S." Compl. ¶ 59.[6] But they have no constitutional right to do so.

First, Alireza Mehrabani does not have a constitutionally protected interest in living with his adult son in the United States. *See Butera v. District of Columbia*, 235 F.3d 637, 656 (D.C. Cir. 2001) ("[A] parent does not have a constitutionally-protected interest in the companionship of a child who is past minority and independent."); *cf. Khachatryan v. Blinken*, 4 F.4th 841, 860 (9th Cir. 2021) ("[A]n adult citizen has no fundamental right to have his or her unadmitted nonresident alien parent immigrate into the United States.").

Second, Shaghayegh Keyhanpoor lacks a liberty interest in residing in the United States with her husband. The Circuit has long declined to recognize such an interest. *See Swartz v. Rogers*, 254 F.2d 338, 339 (D.C. Cir. 1958) ("no constitutional right which is violated by the deportation of [a citizen's] husband" because "[t]he physical conditions of the marriage may change,

---

[6] Plaintiffs also allege that Congress and agencies have created statutory and regulatory rights "related to the petitioning for and issuance of visas and other immigration benefits." Compl. ¶¶ 61–62. They do not identify what these "rights" are, nor do they connect them to a constitutionally recognized liberty or property interest. Moreover, the U.S. Citizen Plaintiffs—the only plaintiffs with standing as to this claim—cannot assert any interest in "rights related to the petitioning for issuance of visas and other immigration benefits" for which they never applied.

but the marriage continues"); *Rohrbaugh v. Pompeo*, 2020 WL 2610600, at *1 (D.C. Cir. May 15, 2020) (per curiam) (reaffirming *Swartz*); *see also Colindres v. U.S. Dep't of State*, 575 F. Supp. 3d 121, 133 (D.D.C. 2021) ("Based on the holding in *Swartz*, numerous courts in this District have dismissed the argument raised here, that denial of an alien spouse's visa implicates the due process rights of a citizen spouse." (collecting cases)).

Plaintiffs try to overcome *Swartz* by pointing to *Kerry v. Din*, 135 S. Ct. 2128 (2015). ECF No. 30 at 4. But they readily acknowledge that the *Din* Court "did not reach a controlling decision on whether U.S. citizens have a constitutional interest in the immigrant visa process of their family members." *Id*. In fact, the *Din* plurality aligns with *Swartz*. *See* 135 S. Ct. at 88–89. Plaintiffs instead ask the Court to reject *Swartz*'s clear and long-standing rule in favor of Justice Breyer's *Din* dissent. This the Court cannot do. "[T]he reasoning of the *Swartz* decision, as well as its holding, remains controlling until the D.C. Circuit or the Supreme Court says otherwise." *Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 49 (D.D.C. 2018).

Because the U.S. Citizen Plaintiffs do not allege that they have a protected liberty interest in their relatives receiving visas, the Court will dismiss their claims under the Fifth Amendment.

### IV.  Conclusion

For all the above reasons, the Court will grant Defendants' motion to dismiss. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 28, 2022